21-2000, Abraham Michelen v. IEEE Globalspec. We would invite the parties to come up. Mr. Michelen, you can come directly up to the podium. And is it Mr. Jones for the appellee? So you have the appellee's table. Mr. Michelen, again, if you would like, you may take your mask off or you may leave it on, whatever you feel more comfortable doing. And then you will see in front of you, there's a little set of lights and you'll see that the green light tells you to go and you can start talking. And then it will show you exactly. No, you don't have to touch them, but they will count down. And then when the red light goes off, that means that your five minutes have been used up. And we'll be trying to hold everyone to their time today. So Mr. Michelen, if you're ready, we are prepared to hear from you. Good morning, everyone here. I am here because I want to ask a court of law to determine if my dismissal as an engineer at GlobalSpec has been correct or not. That is the only thing that I am asking for. And the reason is very simple. This company, I worked with this company when the company started. We used to go there every morning with a very long face because the company was not doing anything. Four engineers, one of them myself, we boosted the company for 20 years. It was a very successful company because of the engineers. This is an engineering company. For 20 years, I was the only semiconductor and nanotechnology electronic engineer in the company, which was the business of the company's 60% electronics. I had my high salary because I have been there for almost 20 years, a lot of benefits. One day, I used to work, just to enhance the company, I used to work Saturdays and Sundays for 20 years. My wife kept complaining because I used to spend Saturdays there. When they dismissed me, they went at my office at 3 o'clock in the afternoon on a Sunday. I was working for them. The reason they dismissed me, they told the EEOC in New York, in Buffalo, they dismissed me because of my metrics. My main job, like other engineers, was to write technical articles. I am a successful engineer. I am a professor at SUNY Poly in Albany. I teach electronics, semiconductors, nanotechnology. I am an expert on this. I wrote, during the four years, more than 700 articles, 700. I used to write every week, every month, what they call a challenging question, a question, a technical question, just to enhance the users to go to the site to try to solve this problem or this question. Now, they said that it was because of my low metrics, because based on something that they call the search engine optimization. The search engine optimization, it was never applied to engineers. Okay, I am... The yellow light just means you have two more minutes. Okay. So, what I want to say, they invented a metric to fire me. Just, if you allow me to, I have a... Let me ask you a question that's really on my mind. Let's assume that you were a terrific exemplary employee, you worked hard for years, you were unfairly fired. But at the end of the day, they offered you a sum of money, I believe it was $50,000, to settle the lawsuit. Did you accept it? No. I didn't accept because I think it is a mockery. It's a mockery against me and my family. Let me tell you the last thing. You did tell the judge, though, that you accepted the settlement, didn't you, in the hearing? There was an oral discussion and mediation, and didn't you tell the judge that you agreed? I don't hear very well, madam. I'm sorry, I'm sorry. My reading of the transcript of the hearing was that you agreed to the settlement, and you said you agreed. Is that correct? That's correct, yeah. But I decided not to accept the agreement because I found out something else. The CEO, in order to fire me, and here you have a statement from my boss. Sir, one of the problems with your argument, and I think we understand that you're saying that you found out more evidence, is that under the law, once you agree to a settlement, you are not allowed to change your mind and back out. Even if you find out more information, the law says once you agree, it's done. So even though your red light is on, we'll give you another, let's say one minute, I'll ask why you think under the law, there's an exception that allowed you to take back your acceptance. So take one more minute. Okay. Because I found new evidence that what the company did was fraud. And that is what the Honorable George Kahn, he wrote in his dismissal. He said the only way that a person can renegade a contract is if they find a lie, a contract, a fraud. And that is what I found. Let me tell you just one thing, Your Honor. Here I have a statement from my boss, my supervisor. And what happened was the CEO of the company, the big person of the company, he went to see the person in charge of the website optimization. This is Mr. Joe Pliskovsky. And he asked him, Joe, I want you to find a metric to fire Abraham that can stand in a court of law. He didn't go there to ask for my metric. He said to find a metric, to find a metric that can fire Abraham. This is not to be allowed. What I want, let a jury of my peers, like in this great country, we have let them decide. I will bring two or three witnesses that they are witness of what they did to me. So, Mr. Michelin, thank you. We gave you a couple extra minutes because we wanted to hear what you had to say. So thank you very much for that. And we've read all of your papers very carefully. And your arguments are as good as many lawyers. Yeah. So let's hear from the other side. And as you saw in the previous case, we hear from one side. We hear from the other side. And then we will not be deciding today. We will have to go back and discuss the case and read the briefs. But at least for today, we've heard your side. And now why don't we hear, let's see, is it Mr. Jones? Yes, Your Honor. Yeah. So Mr. Jones, you have five minutes. And we'll try to keep you to the five minutes. So why don't we hear from you? May it please the Court. Good morning. Stephen Jones for the appellee in this case. Your Honor, Mr. Michelin has not presented any arguments that would overturn the district court's sound decision, finding that there was an enforceable settlement agreement in this case. I do not have any specific further arguments unless the Court has any specific questions it would like me to address. Thank you. No, that's fine. We do have the papers. As we said, we have read the briefs very carefully. We will continue to study the briefs. Today was simply to add anything that was not already in the briefs. We appreciate that from both of you. And as with all of the cases today, we will take them under advisement, meaning we are not deciding these cases today, but we will go back, study the case, and then later a written decision from the Court will issue in all of the cases today. So we thank you all for being here today. And with that, I would ask that the Clerk adjourn the Court. The Court stands adjourned.